UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

UNITED STATES OF AMERICA
ex rel. MICHAEL DUNN,

      Plaintiffs,


v.                                      **MEMORANDUM OF LAW & ORDER**
                                              Civil File No. 10-4673 (MJD/AJB)

NORTH MEMORIAL HEALTH CARE &
NORTH MEMORIAL MEDICAL CENTER,

      Defendants.
_____

D. Gerald Wilhelm, Assistant United States Attorney, Counsel for United States.

Robert C. Hilliard and Catherine D. Tobin, Hilliard Munoz Guerra LLP, Daniel M. Homolka, Daniel M. Homolka, PA, and Markus C. Yira, Yira Law office, Ltd., Counsel for Relator Michael Dunn.

John W. Lundquist, Kevin C. Riach, Lousene M. Hoppe, Fredrikson & Byron, P.A., Counsel for Defendants.
_____

I.     INTRODUCTION

    This matter is before the Court on Defendants North Memorial Health Care and North Memorial Medical Center's motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b). [Docket No. 33] The Court heard oral

1

argument on November 9, 2012.  The Court grants Defendants' motion to dismiss because Relator fails to state a claim upon which relief may be granted.

## II.   BACKGROUND

### A.   Factual Background

#### 1.  Parties

Relator, Michael Dunn, was the Administrator for Cardiovascular Consultants ("CVC") from October 1996 through August 2008.  CVC was an independent cardiology physician group that provided services at North Memorial Medical Center.  In 2009, North Memorial purchased CVC.

Defendant North Memorial Health Care is a medical center and full-service health care provider, and has a primary hospital located in Robbinsdale, Minnesota.  North Memorial Health Care encompasses Defendant North Memorial Medical Center (the Robbinsdale Hospital), twelve primary care clinics, and various regional medical transportation and clinical programs.  Defendants North Memorial Health Care and North Memorial Medical Center (collectively, "North Memorial") provide a wide variety of care, including preventative care, inpatient and outpatient care, and rehabilitative care.

#### 2.  Cardiac and Pulmonary Rehabilitation Services

North Memorial provides cardiac and pulmonary rehabilitation services (collectively, "rehabilitation services") at its Robbinsdale hospital campus. A cardiac rehabilitation program is a medically supervised program to help heart patients recover from heart problems and improve their overall physical health. A pulmonary rehabilitation program is also a medically supervised program and is intended to assist individuals living with pulmonary diseases. Relator further states that the rehabilitation services at North Memorial were performed in an outpatient setting in a building connected to the hospital. Defendants maintain that North Memorial houses its rehabilitation services in the "center of the main hospital building, roughly 50 feet from the cardiology department and a short walk from the emergency room." [Docket No. 37] Defendants acknowledge, however, that for purposes of the present motion to dismiss, the Court must accept Relator's allegations as true. As will be discussed below, whether the rehabilitation services are housed in the main hospital or in a building "connected to the main hospital," the analysis remains the same.

North Memorial conducted six cardiac rehabilitation sessions each day. Approximately two to three non-physician staff members and ten patients

attended each session. The program director was not a physician, but the Medical Director of the program was a physician.

### 3. Medicare's Billing Requirements

Part B of the Medicare program pays for cardiac and pulmonary rehabilitation services that are performed in hospital outpatient and physician clinic contexts. Defendants derived revenue from the Medicare program for its rehabilitation programs.

The Center for Medicare and Medicaid Services ("CMS") administers the Medicare program, implements regulations governing the program, and publishes guidance regarding the rules and regulations governing the program. Pursuant to CMS' published manuals, health care providers submit claim forms in order to be paid for these rehabilitation services. Health care providers submit their claims using an electronic format or a paper format. Institutional providers, such as North Memorial, use either the "837 Institutional electronic claim format" or the UB-04 paper form. See Medicare Claims Processing Manual, Chapter 5 – Part B Outpatient Rehabilitation and CORF/OPT Services, Center for Medicare and Medicaid Services, § 10 (April 27, 2012), http://www.cms.gov/Regulations-and-

4

Guidance/Guidance/Manuals/Downloads/clm104c05.pdf.  Physicians, physician-directed clinics, certain nonphysician practitioners, and therapists in private practice use either the "837 Professional electronic claim format" or the CMS-1500 paper form.  Id.

The paper forms have different requirements for identifying the provider of the rehabilitation services.  The UB-04 paper form includes three fields that capture information about the provider of the health care services:

> **FL 76 – Attending Provider Name and Identifiers**
> …
> The attending provider is the individual who has overall responsibility for the patient's medical care and treatment reported in this claim/encounter.
> …
> **FL 77 – Operating Provider Name and Identifiers**
> …
> The name and identification number of the individual with the primary responsibility for performing the surgical procedure(s).
> …
> **FL 78 and 79 – Other Provider (Individual) Names and Identifiers**
> …
> The name and ID number of the individual corresponding to the qualifier category indicated in this section of the claim.

See Medicare Claims Processing Manual, Chapter 25 – Completing and Processing the Form CMS-1450 Data Set, § 75.5 (July 1, 2011),

http://www.cms.gov/Regulations-and-

Guidance/Guidance/Manuals/downloads/clm104c25.pdf.

The CMS-1500 form also includes fields that capture information about the provider of the health care services:

> **Item 17 –** Enter the name of the referring or ordering physician if the service or item was ordered or referred by a physician.
>
> …
>
> **Referring physician –** is a physician who requests an item or service for the beneficiary for which payment may be made under the Medicare program.
>
> **Ordering physician –** is a physician or, when appropriate, a non-physician practitioner who orders non-physician services for the patient.
>
> …
>
> **Item 24J** - Enter the rendering provider's NPI number in the lower unshaded portion.  In the case of a service provided incident to the service of a physician or non-physician practitioner, when the person who ordered the service is not supervising, enter the NPI of the supervisor in the lower unshaded portion.

See Medicare Claims Processing Manual, Chapter 26 – Completing and Processing the Form CMS-1500 Data Set, § 104.26 (Oct. 26, 2012),

`CASE 0:10-cv-04673-MJD-AJB   Document 46   Filed 12/14/12   Page 7 of 15`

http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c26.pdf.

### 4. The Direct Supervision Requirement

CMS regulations require that all outpatient therapeutic services, including the cardiac and pulmonary rehabilitation services at issue in the present motion, be furnished "under the direct supervision . . . of a physician or nonphysician practitioner." 42 C.F.R. § 410.27(a)(1)(iv).

The definition of "direct supervision" has evolved over time. Prior to January 1, 2010, "direct supervision" was defined as:

> 'Direct supervision' means the physician must be present and on the premises of the location and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

Medicare Program: Changes to the Hospital Outpatient Prospective Payment System, 74 Fed. Reg. 60,316, 60,576 (Nov. 20, 2009). CMS assumed that the direct supervision requirement was satisfied when outpatient therapeutic services, including cardiac and pulmonary rehabilitation, were performed on hospital premises. See Prospective Payment System for Hospital Outpatient Services, 65 Fed. Reg. 18,434, 18,525 (April 7, 2000). Effective January 1, 2010, CMS removed
7

the assumption that direct supervision was satisfied on hospital premises. At this time, Congress codified the presumption of direct supervision for cardiac and pulmonary rehabilitation services performed in a hospital. 42 U.S.C. § 1395x(eee)(2)(B), (fff)(1).

CMS also promulgated various regulations that specifically address "direct supervision" in the cardiac and pulmonary rehabilitation services context. See 42 C.F.R. §§ 410.47 (governing cardiac rehabilitation programs) and 410.49 (governing pulmonary rehabilitation programs). In order to obtain Medicare coverage for a cardiac rehabilitation program, the services must be supervised by a physician and "all settings must have a physician immediately available and accessible for medical consultations and emergencies at all times when items and services are being furnished under the program." 42 C.F.R. § 410.49(a), (b)(3)(ii). Moreover, the patient's individualized treatment plan "must be established, reviewed, and signed by a physician every 30 days." Id. at § 410.49(b)(2)(v). There are similar requirements for obtaining coverage for a pulmonary rehabilitation program. See 42 C.F.R. § 410.47(a), (d)(2)(ii); 410.47(c)(5).

    **5. Defendants' Alleged Fraud**

Relator alleges that throughout the time that he worked for CVC and North Memorial, North Memorial did not provide the requisite physician supervision of its cardiac and pulmonary rehabilitation programs and therefore fraudulently obtained Medicare payments.  North Memorial submitted claim forms to CMS that identified Gary D. Hanovich, Michael R. King, Pam R. Paulsen, and Bilal M. Murad, as supervising physicians for the rehabilitation programs.  Relator alleges, however, that the rehabilitation programs were staffed by non-physicians, and no physician, including the four identified on the claim forms, actually supervised the programs.  Relator further alleges that the four identified physicians were not compensated for providing supervision, they were not scheduled to provide supervision, and they were not available for consultation.

Relator maintains that the "Director of the clinic"[1] acknowledged that the selection of physician names for the claim forms was "arbitrary."  Relator further maintains that the four identified physicians complained about the use of their names and requested assurances from North Memorial administrators that they would not be held personally liable for fraud.

---

[1]    Relator does not specify whether his allegation refers to the Director of the cardiac program or the pulmonary program.

Beginning in February 1997, Relator began verbally communicating with Defendants regarding his belief that North Memorial was not operating its cardiac and pulmonary rehabilitation programs in accordance with the Medicare rules and regulations.  Relator maintains that he informed the following individuals that North Memorial was not meeting the direct supervision requirements:  Neil Jensen, Director of Cardiology; Kaye Foley, President of Patient Care; Beth Heinly-Munk, Director of Cardiology Services for North Memorial; Steve Miller, Director of the Business Office at North Memorial; and Pat Boran, CFO.

Relator also alleges that North Memorial committed fraud by systematically certifying that its physicians were seeing the clinic patients in order to assess their progress.  Relator maintains that 42 C.F.R. §§ 410.47 and 410.49 and their predecessor statutes required the physicians to personally see the patients in the rehabilitation programs to assess treatment and progress.  Relator alleges that the physicians were not personally seeing the clinic patients.

Relator bases all of his allegations on his personal experience as an Administrator of CVC, his conversations with executive-level employees, his

conversations with the staff operating the rehabilitation programs, and his observations of North Memorial's practices.

### B. Procedural Background

Relator filed the original complaint on November 19, 2010 and alleged violations of the False Claims Act. On December 1, 2011, the United States advised the Court of its intention to decline to intervene. Relator served Defendants with the summons and complaint on December 28, 2011. On January 17, 2012, Defendant moved to dismiss Relator's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b). On April 12, 2012, Relator filed his response to the Defendants' Motion to Dismiss and simultaneously filed a Motion for Leave to File Amended Complaint. Defendants did not oppose Relator's Motion for Leave to File Amended Complaint, and withdrew their Motion to Dismiss, reserving their right to move to dismiss the amended complaint.

Relator filed the first amended complaint ("FAC") on May 11, 2012. The FAC sets forth one count: Violations of the False Claims Act. Relator contends that Defendants failed to comply with regulations that require direct physician

supervision of cardiac and pulmonary rehabilitation services, and therefore Defendants' claims for payment of those services from Medicare were false.

Defendants have now moved for dismissal under 12(b)(6) and Rules 9(b), arguing that Relator has not stated a claim upon which relief may be granted, and Relator failed to satisfy the particularity requirements set forth in Rule 9(b).

### III. DISCUSSION

#### A. Rule 12(b)(6) Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

### 1. Count I: False Claims Act Claim

The False Claims Act is concerned with "protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." United States ex re. Vigil v. Nelnet, Inc., 639 F.3d 791, 796 (8th Cir. 2011). "Without sufficient allegations of materially false claims, [a False Claims Act] complaint fails to state a claim on which relief can be granted." Id. The focus is thus on the alleged false claims, as the False Claims Act "attaches liability, not to the underlying fraudulent activity, but to the 'claim for payment.'" Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998) (quoting United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) cert. denied, 519 U.S. 1115 (1997)).

Defendants argue that Relator's complaint should be dismissed because it fails to state a regulatory violation that would give rise to a violation of the False

13

Claims Act.  The Court agrees with the Defendants and finds that Relator failed to plead a violation of the False Claims Act.  Relator's FAC alleges that Defendants violated 42 C.F.R. §§ 410.47 and 410.49 from October 1996 through the present by fraudulently certifying that physicians assessed patients' progress.  As Defendants argue, these regulations were not implemented until 2010, and therefore the Defendants could not have violated the regulations before that time.  Dukes v. U.S. Postal Service, 4 Fed. Appx. 886, 888 (Fed. Cir. 2001) (holding that where alleged bad conduct occurs before that conduct has been made unlawful, claims based on that conduct must be dismissed).  Although Relator represented that "every version of the regulations since 1996 has required that doctors provide these [sic] period reviews," the regulations cited in Relator's lengthy footnote make no reference to periodic assessments for cardiac and pulmonary rehabilitation programs.

Additionally, Relator failed to plead a violation of the "direct supervision" requirement.  During the relevant timeframe, direct supervision for hospital outpatient cardiac and pulmonary rehabilitation services was presumed.  See Prospective Payment System for Hospital Outpatient Services, 65 Fed. Reg. at 18,525 ("We assume the physician supervision requirement is met on hospital

premises because staff physicians would always be nearby within the hospital."); 18 U.S.C. §§ 1395x(eee), (fff) (codifying the direct supervision presumption for hospitals). Relator does not address CMS' presumption of supervision in the hospital setting and does not plead any facts to rebut the presumption.

Thus, the Court concludes that Relator has failed to state a claim upon which relief can be granted, and the FAC should be dismissed.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

>Defendants' Motion to Dismiss [Docket No. 33] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 14, 2012         s/ Michael J. Davis         

              Michael J. Davis
              Chief Judge
              United States District Court